**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

HÉCTOR L. ORTEGA HERNÁNDEZ,

       Plaintiff

         v.

HERBERT J. SIMS & CO., INC.,

       Defendant.

**CIVIL NO.** 23-1266 (RAM)

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Defendant Herbert J. Sims & Co., Inc.'s ("HJ Sims") *Motion to Dismiss to Compel Arbitration* ("*Motion to Dismiss*"). (Docket No. 10). Having considered the parties' submissions in support and in opposition of the motion, the Court **GRANTS** the Defendant's motion at Docket No. 10 and **ORDERS** Plaintiff Héctor L. Ortega Hernández ("Ortega") to arbitrate his claims against HJ Sims. Given that all of the parties' claims are subject to arbitration, this action is **DISMISSED WITHOUT PREJUDICE**.

### I. BACKGROUND

This case arises from a dispute regarding alleged losses in the value of the Plaintiff's brokerage account at HJ Sims. Mr. Ortega initiated this action through a *Complaint* filed on March

8, 2023, before the Court of First Instance of the Commonwealth of Puerto Rico, Bayamon Superior Part. (Docket No. 20-1). Specifically, Mr. Ortega alleges that HJ Sims' mismanagement of his accounts resulted in capital losses of $425,708.35 on his investments. Id. ¶ 51.

The Defendant removed this action on May 24, 2023. (Docket No. 1). On June 2, 2023, HJ Sims filed its *Motion to Dismiss*, requesting that the case be dismissed and the parties be compelled to arbitrate before the Financial Industry Regulatory Authority ("FINRA"). (Docket No. 10). In support of the motion, HJ Sims submitted its September 13, 2013 contract with Mr. Ortega (the "New Account Agreement"), which included an arbitration clause and agreement. (Docket No. 13).

Mr. Ortega filed his *Motion in Opposition to the Motion to Dismiss* ("*Response*") on June 7, 2023. (Docket No. 18). In the *Response*, he argues the *Motion to Dismiss* should be denied because claims such as his that are submitted more than six years after the occurrence or event that gave rise to the claim are not eligible for FINRA arbitration. Id. ¶¶ 4-13. In the alternative, Mr. Ortega requests that the Court order arbitration before the American Arbitration Association ("AAA"), not FINRA. Id. ¶ 15.

HJ Sims submitted a *Reply* on June 16, 2023, arguing that whether Plaintiff had eligible claims was a matter for the arbitrator, not the Court, and that the arbitration agreement made clear that any controversy was to be submitted to FINRA, not the AAA. (Docket No. 22).

## II.  APPLICABLE LAW

### A.  Compelling arbitration under Section 2 of the Federal Arbitration Act

Under First Circuit precedent, "[i]n deciding a motion to compel arbitration, a court must ascertain whether: '(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration.'" Gove v. Career Sys. Dev. Corp., 689 F. 3d 1, 4 (1st Cir. 2012) (quoting Combined Energies v. CCI, Inc., 514 F.3d 168, 171 (1st Cir. 2008)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *See* AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 343–344 (2011).

Section 2 of the Federal Arbitration Act ("FAA") provides:

> **A written provision** in any maritime transaction or **a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction,** or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, **shall be**

> **valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.**

9 U.S.C. § 2 (emphasis added). The United States Supreme Court has stated that this statute "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Therefore, section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Id. at 24-25.

Given the liberal federal policy favoring arbitration agreements established by the FAA, "**as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration**, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. (emphasis added). Indeed, it is well-settled that questions of arbitrability must be handled with a high regard for the federal policy in favor of arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. See Colón de Sánchez v. Morgan Stanley Dean Witter, 376 F. Supp. 2d 132, 135 (D.P.R.

2005); <u>Carro v. Parade of Toys, Inc.</u>, 950 F. Supp. 449, 451-52 (D.P.R. 1996); <u>Cardona Tirado v. Shearson Lehman Am. Exp., Inc.</u>, 634 F. Supp. 158, 159 (D.P.R. 1986).

Under First Circuit precedent, "the existence of a valid arbitration agreement does not strip the court of jurisdiction." <u>Álvarez-Maurás v. Banco Popular of Puerto Rico</u>, 919 F.3d 617, 623 n.8 (1st Cir. 2019). However, "there is a split in authority as to how courts characterize dismissal on arbitrability grounds, with some courts treating the dismissal as jurisdictional and thus pursuant to Rule 12(b)(1); other courts treating the dismissal as 'failure to state a claim cognizable in federal court' and thus pursuant to Rule 12(b)(6); and still others treating the dismissal as 'entirely separate from the Rule 12(b) rubric.'" <u>Cortes-Ramos v. Sony Corp. of Am.</u>, 836 F.3d 128, 130 (1st Cir. 2016) (quoting <u>Cont'l Cas. Co. v. Am. Nat'l Ins. Co.</u>, 417 F.3d 727, 732 (7th Cir. 2005)). When there is no factual dispute as to the existence of a valid arbitration agreement, whether the motion to compel is brought pursuant to Rule 12(b)(1) or 12(b)(6) is a "distinction without a difference." <u>Álvarez-Maurás</u>, 919 F.3d at 623 n.8.

Moreover, under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6), the Court takes well pleaded facts as true and may consider certain exhibits without conversion to summary judgment. *See*

Meléndez v. Starwood Hotels and Resorts Worldwide, 939 F. Supp.
2d 88, 90 (D.P.R. 2013) (compelling arbitration and dismissing
claims under Fed. R. Civ. P. 12(b)(1)); Tellabs, Inc. v. Makor
Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (stating that
when ruling on Fed. R. Civ. P. 12(b)(6) motions to dismiss,
courts ordinarily consider documents incorporated into the
complaint by reference). Accordingly, the Court may consider the
New Account Agreement in ruling on this motion.

   **B.   Stay or Dismissal of the Action under the FAA:**

      Section 3 of the FAA provides:

>      If any suit or proceeding be brought in any of the courts
>      of the United States upon any issue referable to
>      arbitration under an agreement in writing for such
>      arbitration, the court in which such suit is pending, upon
>      being satisfied that the issue involved in such suit or
>      proceeding is referable to arbitration under such an
>      agreement, shall on application of one of the parties **stay
>      the trial of the action until such arbitration has been had
>      in accordance with the terms of the agreement,** providing
>      the applicant for the stay is not in default in proceeding
>      with such arbitration.

9 U.S.C. § 3 (emphasis added). In other words, once a party
adequately demonstrates that the claims pending before the court
are subject to arbitration pursuant to a valid, written
arbitration agreement, the FAA directs the court to stay the
proceedings pending the completion of the arbitration. Id.

      However, in the First Circuit, courts may dismiss rather
than stay the action when all the issues before the court are

arbitrable. <u>Dialysis Access Center, LLC v. RMS Lifeline, Inc.</u>, 638 F.3d 367, 372-73 (1st Cir. 2011) (citing <u>Next Step Med. Co. v. Johnson & Johnson Int'l</u>, 619 F.3d 67,71 (1st Cir. 2010)).[1]

### III. ANALYSIS

**A. All three factors required to compel arbitration are present.**

<u>First</u>, a written agreement to arbitrate exists. Section 14 of the New Account Agreement provides in relevant part: "[a]ny controversy between you or Pershing and us shall be submitted to arbitration before and only before the Financial Industry Regulatory Authority." (Docket No. 13 at 13). Mr. Ortega does not contest that an arbitration clause exists, and the liberal federal policy favoring arbitration agreements is best served by holding parties to the bargain they struck when they executed the New Account Agreement containing the arbitration clause.

<u>Second</u>, the dispute falls within the scope of the agreement to arbitrate. The arbitration provision in Section 14 of the New Account Agreement applies to **"any controversy** between you or Pershing and us . . .." (Docket No. 13 at 13) (emphasis added). Such language is "'paradigmatic' of a broad arbitration clause." <u>Encore Benefit Mgmt., Inc. v. Phoenix Benefits Mgmt., LLC</u>, 2019

---

[1] The Court notes that, based on the plain language of § 3 of the FAA, the Second Circuit has rejected the practice of dismissal in lieu of a stay. <u>See</u> <u>Katz v. Cellco Partnership</u>, 794 F.3d 341 (2d Cir. 2015) (noting Circuit split).

WL 5957174, at *4 (D.P.R. 2019) (citing <u>Spinelli v. Nat'l Football League</u>, 96 F. Supp. 3d 91, 100 (S.D.N.Y. 2015)).

The First Circuit has interpreted broad language of this nature as covering "**contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort . . ..**" <u>Acevedo Maldonado v. PPG Indus. Inc.</u>, 514 F.2d 614, 616 (1st Cir. 1975) (emphasis added). That is, the First Circuit rejects the exclusion of controversies arising out of or relating to the contract from the scope of arbitration. *See also* <u>Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.</u>, 473 U.S. 614 (1985) (agreement to arbitrate "all disputes, controversies or differences which may arise between [parties] out of or in relation to [certain articles] of this Agreement or for the breach thereof" was sufficiently broad to encompass claims under the Sherman Act, Federal Automobile Dealers' Day in Court Act, Puerto Rico Dealers' Act and Puerto Rico antitrust and unfair competition statute); <u>Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.</u>, 1 F.3d 639, 642 (7th Cir. 1993) (noting that "arising out of" covers all disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se").

Mr. Ortega's claims—which primarily center on breaches of fiduciary duties and frauds allegedly committed by HJ Sims regarding Plaintiff's investments—arose out of, and are connected to, the New Account Agreement or purported breaches of the same. The Complaint makes plain that Mr. Ortega's allegations are related to breaches of obligations under the New Account Agreement and thus also fall under the scope of the broad arbitration clause therein.

Third, Defendant has not waived the right to arbitrate. Mr. Ortega does not contend that HJ Sims waived its right to arbitration. Nor is waiver borne out by the circumstances of the case, as HJ Sims raised the issue of arbitration close to the inception of litigation. *See* Creative Sols. Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001) (finding defendant did not waive right to arbitration where it moved to compel arbitration two months after it was required to plead to the complaint and five months after plaintiffs filed the action). Nor does Mr. Ortega claim to be prejudiced by any delay on the part of HJ Sims in moving to compel arbitration. A plaintiff must show prejudice to establish implied waiver of the right to arbitrate. *See* Restoration Pres. Masonry, Inc. v. Grove Europe, Ltd., 325 F.3d. 54, 61 (1st Cir. 2013).

As all three factors are met, the court must enforce the arbitration agreement in accordance with its terms. *See* AT&T Mobility LLC, 563 U.S. at 343–344.

## B. Claim eligibility is an issue for the arbitrator, not the district court.

Though Mr. Ortega asserts that his claims are ineligible for arbitration at FINRA, claim eligibility is not a matter for the district court to decide. Rather, "the applicability of the [arbitrator's] time limit rule is a matter presumptively for the arbitrator, not the judge." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 85 (2002) (rejecting same argument in case involving arbitrator with similar time limit rule). *See also* Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 11 (1st Cir. 2005) (same).

## C. The arbitration forum is governed by the terms of the arbitration agreement.

Mr. Ortega's proposal to substitute the AAA as the arbitrator is barred by the language of the New Account Agreement, which explicitly notes that claims "shall be submitted to arbitration **before and only before the Financial Industry Regulatory Authority**." (Docket No. 13 at 13) (emphasis added). Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their

terms." Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S.
Ct. 524, 529 (2019).

### D.  Dismissal is appropriate.

Other judges in this District have repeatedly found that
dismissal without prejudice is appropriate when all issues
presented in the complaint are arbitrable. *See* Ideal Ltd.
Services Corp. v. Swift-Eckrich, Inc., 727 F. Supp. 75, 78
(D.P.R. 1989); Sea-Land Servs., Inc. v. Sea-Land of Puerto Rico,
Inc., 636 F. Supp. 750, 757 (D.P.R. 1986) ("Given our ruling
that all issues raised in this action are arbitrable, retaining
jurisdiction and staying the action will serve no purpose.").
Because Mr. Ortega's claims are encompassed by the arbitration
clause, dismissal, rather than a stay, is appropriate in this
case.

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Herbert J. Sims & Co., Inc.'s *Motion to Dismiss to Compel Arbitration* (Docket No. 10) and **ORDERS** Plaintiff Héctor L. Ortega Hernández to arbitrate his claims against Herbert J. Sims & Co., Inc. This action is **DISMISSED WITHOUT PREJUDICE** as all claims made herein must proceed to arbitration. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 26th day of June 2023.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge